UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARATHON LINEN SERVICES, INC.,

      Plaintiff,

v.
                                                   Case No. 06-14454
                                                   Hon. Sean F. Cox

G&K SERVICES, CO.,

      Defendant.
_____

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Cross Motions for summary judgment.  Both parties

have fully briefed the issues and a hearing was held March 15, 2007.  For the following reasons,

the Court **DENIES** Plaintiff's Motion for summary judgment and **GRANTS** Defendant's Motion

for summary judgment.

## I.    BACKGROUND

This action arises out of an alleged breach of contract.  Both parties are in the business of

commercial laundry and linen supply.  In mid-2004, the parties began discussing the sale of

Plaintiff to Defendant.  A primary concern was obtaining extended service contracts with

Plaintiff's primary accounts, Visteon and Ford Motor Company.

On October 7, 2004, the parties executed an asset purchase agreement.  Defendant agreed

to purchase Plaintiff's business for $5,354,109.00.  However, because the parties were as yet

unable to obtain extended service agreements with Visteon and Ford, the parties agreed to a

1

"holdback." The parties agreed that $2,250,000.00 would be held back from the payment of the purchase price, meaning Defendant paid $3,744,411.00 at the time of purchase. The holdback amount was to be paid out in five $450,000.00 installments over two and a half years, with interest, subject to the terms of the agreement. The terms of the agreement provided that the installment, with the exception of the first one, could be forfeited based on the weekly revenue for the industrial accounts during the four weeks preceding the date the installment payment was to be made. The agreement provided that regardless of revenue, the first installment would be $450,000.00.

The agreement also provided that if an extended service agreement was obtained with Visteon or Ford, a predetermined percentage of the holdback amount would be released. The percentages were 45% and 55%, respectively. On December 20, 2004, Visteon executed a three year contract with Defendant. Accordingly, on January 17, 2005, Defendant paid Plaintiff 45% of the holdback amount, or $1,020,684.00. The installment payments, with the exception of the first one, were to be prorated based on the payment of 45% of the holdback. Thus, the adjusted installment payments were to be $196,000.00 plus interest.

The first and second installment payments were paid as agreed in April and October 2005. The third installment payment was due in April 2006. Plaintiff alleges it contacted an accountant at G&K, Jordy Casperson, who indicated the payment of $196,000.00 plus interest, would be wired, pending approval of the legal department. However, Casperson contacted Plaintiff the next day and indicated there was a miscalculation and that based on the weekly sales revenue, the installment payment was forfeited under the terms of the agreement. Plaintiff disputed Defendant's calculations. Specifically, the parties disagree over whether the weekly

2

sales revenue from Visteon should be included in the installment payment forfeiture calculations, since the holdback amount was released regarding Visteon.

Plaintiff filed a Complaint in Oakland County Circuit Court on September 20, 2006, which: (1) alleged breach of contract; (2) sought declaratory judgment and reformation on the Visteon account; and (3) sought declaratory judgment and reformation on all accounts. The action was removed to this Court on October 11, 2006.

The fourth installment payment came due in October 2006, but Defendant claims it was forfeited based on the weekly sales revenue, which included Visteon. Plaintiff contends that without the inclusion of the Visteon sales, the regular installment payment of $196,000.00 plus interest would have been due.

On December 21, 2006, Defendant filed a Motion for summary judgment on all counts. Plaintiff filed its own Motion for summary judgment on January 24, 2007. Additionally, Plaintiff filed a Motion for leave to amend the Complaint on January 31, 2007, to add the October 2006 installment as damages. Defendant does not object.

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate

principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.   ANALYSIS

Both parties agree that Minnesota law is to be applied. The crucial issue in this case is whether the agreement provided that Visteon should be removed from the weekly revenue calculations once an extended service agreement is obtained.

### A.   Breach of Contract

Minnesota law provides that "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (2003). In interpreting an unambiguous contract under Minnesota law, the court is to give the language its plain and ordinary meaning and to attempt to give meaning to all of the contract's provisions. *The Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 821 (8th Cir. 2006). However, the words are not to be viewed in isolation, "[i]ntent is ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the contract as a whole." *Motorsports Racing*, 666 N.W.2d at 324. But, "[i]n interpreting the meaning of an unambiguous contract, the court cannot consider anything other than the contract." *Winthrop Resources Corporation v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir. 2004). "If the contract is unambiguous, the interpretation is a question of law." *Id*.

4

However, a contract is ambiguous if "based upon its language alone, it is reasonably susceptible of more than one interpretation." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (2003). "The determination of whether a contract is ambiguous is a question of law, but the interpretation of an ambiguous contract is a question of fact for the jury." *Id.* (citations omitted). Where a contract term is ambiguous, the trier of fact may consider extrinsic evidence to help it determine the parties' intent. *Winthrop Resources*, 361 F.3d at 470.

In this case, the parties dispute whether the contract intended that the holdback amount was meant to secure the Visteon and Ford accounts unless and until an extended service agreement was obtained. According to Plaintiff, the holdback amount was merely a security for the Visteon and Ford accounts. Once an extended agreement was obtained between Defendant and Visteon, and the holdback amount that pertained to Visteon was released, the revenue from Visteon should no longer have been included in determining the amount of forfeiture of the remaining holdback installment payments. Defendant disagrees, claiming that under the express terms of the agreement, regardless of whether an extended service agreement was obtained, Visteon remains an "industrial account" under the contract and its revenue is considered in the forfeiture analysis.

There are three subparts of ¶3.2 at issue in this case:

(2)     In the event that Purchaser secures new written customer service agreements (with at least three-year terms) with Ford Motor Company ("Ford") and/or Visteon Corporation (Detroit operations) ("Visteon") after the Closing and before the final Installment Release Date, as approved by Purchaser in its sole discretion, then Purchaser shall, within ten (10) business days thereafter, release and pay to Seller (i) 45% of the Holdback Amount then existing in the case of a written agreement with Visteon, and/or (ii) 55% of the Holdback Amount then existing in the case of a written agreement with Ford.

5

(3)     The Average Weekly Rental Revenue of the Industrial Accounts combined with the COP revenue for service to the COP Industrial Accounts during the four-week period immediately preceding each Release Date (the "Post-Closing Average Weekly Revenue") must be greater than ninety percent (90%) of the combined Pre-Closing Average Weekly Rental Revenue and Average Weekly COP Revenue (such threshold is the "Revenue Threshold"). If the Post-Closing Average Weekly Revenue for any four-week period immediately preceding a Release Date is not greater than the Revenue Threshold, then Seller shall forfeit that portion of the applicable Holdback Amount installment equal to the product of (x) the difference between the Revenue Threshold and the Post-Closing Average Weekly Revenue calculated with respect to such Installment Release Date, multiplied by (y) thirty-five (35). Notwithstanding the foregoing to the contrary, the installment of the Holdback Amount payable on the Initial Rlease Date shall be paid in full without reference to the test under this paragraph.

(4)     If the Post-Closing Average Weekly Revenue from each of the Ford, Visteon and Detroit Edison ("Detroit Edison") Industrial Accounts is not greater than eighty percent (80%) of the Pre-Closing Average Weekly Revenue for each such Industrial Account, then Seller shall forfeit that portion of the applicable Holdback Amount installment equal to the product of (x) the different between the Pre-Closing Average Weekly Revenue for such Industrial Account and the Post-Closing Average Weekly Revenue for such Industrial Account for the four-week period immediately preceding the relevant Release Date multiplied by (y) thirty-five (35). Notwithstanding the foregoing to the contrary, the installment of the Holdback Amount payable on the Initial Release Date shall be paid in full without reference to the test under this paragraph.

[Defendant's Motion, Exhibit 2, pp.4-5]. The agreement does not explicitly address whether the

forfeiture calculations should be adjusted if an extended service agreement is obtained with only

Visteon.

The terms are clear that if an extended service agreement was obtained from both Ford

and Visteon, the forfeiture calculations would not apply because there would be no holdback

amount to apply them to. However, in this case, an extended service agreement was obtained for

only Visteon. The parties dispute whether the Visteon statistics should continue to be considered

6

in the forfeiture calculation.  In order to determine if there is ambiguity in the contract on this

issue, the Court must decide if there is more than one reasonable interpretation of the contract.

The fact that the parties each offer a differing interpretation does not constitute ambiguity, both

interpretations must be reasonable under the plain language of the contract.  The Minnesota

courts have recently summarized the rules for determining the meaning of a contract:  (1)

whether a contractual provision is ambiguous is a legal question; (2) a contract provision is

ambiguous if, based on its language alone, it is reasonably susceptible to more than one meaning;

(3) if a contractual provision is ambiguous, determining what the ambiguous provision means is

a factual question; and (4) if the contractual provision is not ambiguous, its language must be

given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh.

*Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 586 (Minn.App. 2004)(citing *Denelsbeck*, 666

N.W.2d at 346-347).

        The contract provisions at issue here are reasonably susceptible to only one interpretation.

It is clear from a reading of the contract that the purpose of holding back part of the purchase

price was to ensure Defendant would not get a bad bargain based on a loss of revenue.  If Ford

and Visteon executed a service agreement of at least a three year term with Defendant, Defendant

agreed to pay Plaintiff the holdback amount, net of any forfeitures. [Defendant's Exhibit 2, p.4].

If the Ford and Visteon agreements were obtained, that would be sufficient to secure the revenue

such that Defendant would pay the remainder of the purchase price, *i.e.* the holdback amount.  As

Plaintiff points out, those two accounts made up approximately 90% of Plaintiff's business.

However, if one or both of the agreements were not obtained, then the revenue is not sufficiently

secured.  Thus, the forfeiture calculations would apply, based on the average weekly revenue

from not only Ford and Visteon, but from Detroit Edison and any other accounts designated "Industrial Accounts." [Defendant's Exhibit 2, p.5].

The interpretation urged by Plaintiff is not reasonable in light of the plain language of the contract. Plaintiff does not direct the Court to any language in the contract that supports its allegation that payment of a percentage of the holdback amount based on an extended agreement with Ford or Visteon, removes that account from the forfeiture calculations. To the contrary, if the holdback amount were only intended to secure the Ford and Visteon revenue, there would be no need to include other "Industrial Accounts" in the forfeiture calculation. Moreover, there is no distinction anywhere in the contract regarding a "Ford holdback" or "Visteon holdback" such as Plaintiff wishes to imply. [Plaintiff's Motion, p.6]. There is one general Holdback Amount which is subject to the subparts outlined above.

Plaintiff offers evidence that the parties did not intend such a result. However, the Court is precluded from considering the extrinsic evidence offered by Plaintiff where the terms of the agreement are clear and unambiguous. See *Winthrop Resources*, 361 F.3d at 470. Thus, the Court does not consider the letters and conversations offered by Plaintiff to support its position because there is no ambiguity in the terms of the contract. Under the terms of the contract, if there is any holdback amount, it is subject to the forfeiture calculations defined in subparts 3 and 4, notwithstanding the payment of a portion of the holdback amount for the obtaining of an extended service agreement under subpart 2.

### B.      Reformation

Plaintiff also sought to reform the contract as to Visteon ("Count II") and the accounts in general ("Count III"). In its Response to Defendant's Motion for summary judgment, Plaintiff

seeks to withdraw Count II, and may withdraw Count III depending on the amount of the fifth

Holdback Amount installment. [Plaintiff's Response, p.18].

Plaintiff seeks to reform the contract because it concludes that after the Pre-Closing

Average Weekly Revenue is adjusted to remove the "Quit Accounts" (accounts that ended prior

to the sale to Defendant) and the Visteon figures, the Ford business that was already adjusted for

may be adjusted for again.  Plaintiff is concerned that Defendant will be compensated twice for

Ford losses.

"A written instrument can be reformed by a court if the following elements are proved:

(1) there was a valid agreement between the parties expressing their real intentions; (2) the

written instrument failed to express the real intentions of the parties; and (3) this failure was due

to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable

conduct by the other party."  *Nichols v. Shelard National Bank*, 294 N.W.2d 730, 734 (1980).

"These facts must be established by evidence which is clear and consistent, unequivocal and

convincing."  *Id*.  "[A] party seeking reformation of a contract has an 'onerous' burden of proof."

*Employers Mutual Casualty Company v. Wendland & Utz, Ltd.*, 351 F.3d 890, 894 (8th Cir.

2003).

Plaintiff has not identified any evidence supporting its request for reformation.  Rather,

Plaintiff articulates a complicated hypothetical of a problem it believes may occur which would

have unfair and unconscionable results.  Reformation is not the appropriate remedy.  Defendant

is entitled to summary judgment.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for summary judgment

and **GRANTS** Defendant's Motion for summary judgment.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated:  April 18, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record
on April 18, 2007, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**